**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

QUENNA OWENS,                                    :

      Plaintiff,                                    :

vs.                                    :          CA 15-0216-C

CAROLYN W. COLVIN,                                    :
Acting Commissioner of Social Security,
                                           :

      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 19 ("In accordance with  the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the December 9, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to a right hand injury with nerve damage and chronic pain, diabetes, hypertension, obesity, depression, loss of vision, hypothyroidism, headaches, chronic rhinitis and sinusitis, medication side effects, fatigue, GERD, and breast cancer. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1.      The claimant has not engaged in substantial gainful activity since January 7, 2013, the amended alleged onset date (20 CFR 416.971 *et seq.*).
>
> 2.      The claimant has the following severe impairments: obesity, insulin dependent diabetes mellitus, status post breast cancer with mastectomy, and contracture joint, right hand (2004 injury to hand from knife cut) (20 CFR 416.920(c)).
>
> .      .      .
>
> 3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> .      .      .
>
> 4.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following exceptions: no climbing ladders, ropes or scaffolds; no unprotected heights or hazardous machinery; and she is limited to no more than occasional repetitive handling and fingering with the dominant right hand.
>
> .      .      .

At the hearing, [the claimant] testified that since starting chemotherapy, she has been slow, with slow heartbeat, sluggish, and unable to persist at tasks for more than 30 minutes at a time. She spends most of her time in bed, recovering from chemotherapy at this point. She can do a little more after the four days after chemotherapy. She said her daughter helps her with things and that she goes to chemotherapy twice a month for three hours each. She has issues with GERD and surgery has been recommended when she finishes chemo. She reported a diagnosis of diabetes and that she takes shots twice a day for this. She has issues using her hand (writing, balling in a fist, etc.) and she takes Lortab for the pain every four hours. She is right handed, and cannot open a door with her

hand, allegedly. However, I do note that prior to chemotherapy she was helping care for her mother, feeding her, brushing her teeth, and cooking for her. She can shop, do household chores, wash clothes, and help her mother (prior to chemo).

.     .     .

Although she did exhibit some negative results to the chemotherapy, including dehydration that required hospitalization, upon release she was stable on therapy. Her physician requested [] barium swallow after she was released from the hospital, and it revealed esophageal diverticulum near diaphragm and GERD. Notes from Cancer Center of Demopolis also reveal that she looked good and was tolerating treatment well. Follow up from the dehydration admission indicated that she "feels better".

.     .     .

As for the rest of the opinion evidence, the undersigned gives great weight to the opinion of Dr. Anderson at the second hearing. Dr. Anderson testified that the claimant is a 48[-]year[-]old woman with metabolic syndrome, who is obese (5'2", 172 pounds), with obesity related hypertension and diabetes mellitus. She has no complications associated with that. She has asymptomatic hypothyroidism. She has carcinoma of the right breast diagnosed in February 2013, and has undergone a modified mastectomy in March of this year, with follow-up chemotherapy and radiotherapy as per standard protocol. Her workup reveals no metastatic disease and has no documented complications of therapy other than an episode of gastritis associated with chemotherapy in April of 2013.[2] She also has the distant diagnosis of laceration of the right hand. Postural restrictions are not delineated, but there is some suggestion that she has some incisional pain from a laceration. She declined the physical examination. The records indicate that she does not meet or equal the carcinoma listing, as she does not have any documentation of metastatic recurrent disease process, and she does not have documentation of complications that would be expected to last 12 months. Taking into consideration her obesity, he opined that light work activity is supported. Because of the allegations of pain, he limited her to occasional use only for the right hand for repetitive fingering and handling. These restrictions are present from the amended onset through today. He noted also that GERD and constipation were present, but not severe impairments. He also saw no pulmonary restrictions in the record. Dr. Anderson also testified that dehydration, GI complaints, nausea, and vomiting, are all side effects of

---

[2]     The ALJ's summary of Dr. Anderson's hearing testimony is incorrect in two respects, as Dr. Anderson later admitted not only that plaintiff was hospitalized for dehydration, as well, as a result of her chemotherapy treatments (*see* Tr. 67) but, as well, that he did not know whether plaintiff's radiation therapy would follow standard protocol (*see* Tr. 68).

chemotherapy, as well as significant weakness. However[,] those complications are not expected to last 12 months per Dr. Anderson's review of the record. Her treatment appears to be according to standard protocol.

.     .     .

**5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).**

.     .     .

**6.     The claimant was born on March 13, 1965 and was 47 years old, which is defined as a younger individual age 18-49, on the amended alleged onset date (20 CFR 416.963).**

**7.     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).**

.     .     .

**9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).**

.     .     .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as child care attendant [DOT #349.677-018], light, unskilled, with 60,000 jobs in the national economy; machine off bearer [DOT #569.686-046], light, unskilled, with over 100,000 jobs in

4

the national economy; and bakery worker [DOT #529.687-022], light, unskilled, with 150,000 jobs in the national economy.

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10.     The claimant has not been under a disability, as defined in the Social Security Act, since January 7, 2013, the amended alleged onset date (20 CFR 416.920(g)).**

(Tr. 39, 39-40, 40-41, 42, 43-44, 44 & 45 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

A claimant is entitled to an award of supplemental security income benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.905(a) (2015). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities (that is, a severe impairment), she is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the

claimant will be considered disabled without consideration of age, education and work experience. 20 C.F.R. § 416.920(d). At the fourth step, if the claimant is unable to prove the existence of a listed impairment, she must prove that her physical and/or mental impairments prevent her from performing her past relevant work. 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs existing in substantial numbers in the national economy that the claimant can perform,[3] the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a claimant proves that she is unable to perform her past relevant work, in the fifth step, 'the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform.' . . . Should the Commissioner 'demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.'").

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she is capable of performing those

---

[3]     *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004) ("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the claimant can perform currently exists in the national economy.").

light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010)[5] (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, Owens asserts numerous reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ failed to complete a PRTF and append it to the decision or incorporate its mode of analysis into her findings; (2) the ALJ's mental RFC assessment is not supported by substantial evidence because the ALJ ignored the impact of plaintiff's depression, as well as her chronic pain; (3) the ALJ failed to accurately consider plaintiff's medication side effects; and (4) the hypothetical posed to

---

[4]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[5]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

the vocational expert was incomplete. Because the Court agrees with plaintiff's fourth assignment of error, there is no need to address at any length the other assignments of error raised by Owens. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

As indicated above, this is a fifth step case and at the fifth step the Commissioner must establish that a significant number of jobs exist in the national economy that the claimant can perform given her RFC, age, education, and work experience. *See, e.g., Bellew v. Acting Commissioner of Social Security,* 605 Fed.Appx. 917, 930 (11th Cir. May 6, 2015) (citation omitted). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert." *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1180 (11th Cir. 2011), citing *Phillips v. Barnhart,* 357 F.3d 1232, 1239-1240 (11th Cir. 2004). Here, of course, in finding that Owens could perform other work existing in significant numbers in the national economy (*see* Tr. 45), "the ALJ relied exclusively on the testimony of a vocational expert[.]" *Dial v. Commissioner of Social Security,* 403 Fed.Appx. 420, 421 (11th Cir. Nov. 18, 2010). "'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Winschel, supra,* 631 F.3d at 1180, quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam); *see also Dial, supra,* 403 Fed.Appx. at 421 (where ALJ failed to include all of the claimant's "employment limitations in the hypothetical questions posed to the VE . . ., the VE's testimony did not constitute substantial evidence upon which the ALJ could rely.").

The hypothetical posed by the ALJ to the VE in this case clearly did not include all of Owens' employment limitations as nowhere is mention made of any limitations

resulting from the significant side effects attendant to plaintiff's chemotherapy and scheduled radiation. Although the medical expert ("ME"), during the course of plaintiff's hearing, specifically testified that there was no documentation in the record that the complications (that is, side effects) from chemotherapy had been or could be expected to last for twelve months (Tr. 67-68)—an observation which was afforded great weight by the ALJ (*see* Tr. 43-44)—the ME also unequivocally recognized that plaintiff would be undergoing radiation therapy which could apparently last for at least another 40 days (Tr. 68), if not longer.[7] Plaintiff's chemotherapy treatments, of course, were not complete at the time of the hearing and were not expected to be complete for at least four weeks after the hearing. (Tr. 57.) When these facts are combined with the ALJ's failure to inquire of the ME about the standard "break" between completion of chemotherapy and the start of radiation therapy,[8] or questioning the plaintiff about whether her radiation was to be in accordance with the "standard protocol," the undersigned cannot find that the ALJ's failure to incorporate into her hypothetical limitations attendant to cancer treatment side effects supported by substantial evidence in a case in which the ALJ admits that plaintiff's "***status post*** breast cancer with

---

[6]    The ME's testimony confirmed that of plaintiff that the expected side effects of chemotherapy would include gastroenteritis, dehydration, nausea, vomiting, and weakness/fatigue. (*See* Tr. 65-67.)

[7]    This Court has no way of knowing whether Owens would be on the "standard protocol" relative to radiation treatments (*see* Tr. 68 ("Usually 20 treatments, so if she's on a . . . standard protocol, then usually 20 treatments, which are spread out over 30 days or 40 days depending upon the various equipment used.")), or some other more stringent protocol, again begging the question of why the ALJ did not include in her hypothetical to the VE the employment impact of the significant side effects of breast cancer therapy.

[8]    The ME testified that there are "significant side effects[]" to radiation therapy (Tr. 68), although he did not delineate those effects beyond recognizing that his wife "died of side effects of radiation of breast cancer." (*Id.*)

mastectomy" is a severe impairment (Tr. 39 (emphasis supplied)). This particularly in an SSI case—that is, a social security case not defined, or in any way impacted, by the "date last insured"—in which the ALJ informed plaintiff's counsel, albeit off-the-record on an earlier hearing date (*see* Tr. 78),[9] that if plaintiff amended her onset date to the date she was diagnosed with cancer—which happened (*compare* Tr. 39 (recognizing an amended onset date of January 7, 2013) *with* Tr. 247-248 (plaintiff amended her onset date to January 7, 2013, the approximate date of her cancer diagnosis))—a fully favorable decision could be reached based upon testimony from a vocational expert regarding breaks and absences attributable to the side effects from plaintiff's cancer treatments (*see* Doc. 14, at 9; *compare id. with* Tr. 81 (VE's testimony during the earlier April 15, 2013 hearing that appears to suggest that there would be no work available for an individual who would exceed the normal number of absences allowed per month by employers and would require more than two 15-minute breaks per workday)). Because breaks and absences attributable to side effects from cancer treatments would likely be vocationally significant (*see* Tr. 72 (the VE's testimony at the most recent hearing in this regard is significantly impaired by inaudibility[10])), this matter is due to be remanded for further consideration not inconsistent with this decision.[11]

---

[9]       That a discussion occurred prior to the ALJ going on the record on April 15, 2013 cannot be gainsaid. (Tr. 78 ("The hearing is ***now*** open in the case of Quenna Owens[.] . . . This is a videoconference hearing with the date being April 15th, 2013. The claimant is not present today. ***We have a report*** that she is currently hospitalized due to possible breast cancer. However, her representative . . . is present in Selma[.]"); *compare id. with* Tr. 82 ("ALJ: What we will do is send an official [INAUDIBLE] letter, and we will make a decision [phonetic].").)

[10]       This inaudibility makes it impossible for this Court to fully evaluate the ALJ's decision denying benefits and supports remand. *Cf. Carrington v. Heckler*, 587 F.Supp. 61, 61-62 (M.D. Ga. 1984) ("It is imperative that this court scrutinize the record *in its entirety* to determine whether the Secretary's decision is reasonable. Because a substantial part of the verbal testimony is missing, the entire record is not before the court. Therefore, the court can reach no (Continued)

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 21st day of December, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

_____

decision on whether the Secretary's decision was supported by substantial evidence." (internal citation omitted; emphasis in original)).

In addition to the foregoing, the VE's testimony suffers from another problem. In identifying jobs in response to the posed hypothetical, the VE identified the job of bakery worker as unskilled light work with a DOT number of 529.687-022 (Tr. 72). However, DOT #529.687-022 is the designation for "bulk filler," an unskilled **heavy** job. *See* Dictionary of Occupational Titles, 529.687-022 (4th ed. 1991). Obviously, this job is not an option for plaintiff.

[11]     On remand, the ALJ should also direct some attention to plaintiff's alleged depression, about which no mention is made in the administrative decision (*see* Tr. 39-45) but numerous references are made in the record (*see, e.g.,* Tr. 256, 260, 264, 268, 272, 275, 278, 281, 287, 320, 336, 340, 344, 358, 361, 377-378, 416-421 & 427), and whether there is a need to append to the (remand) administrative decision a PTRF or incorporate into the remand decision its mode of analysis. *Compare Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) ("We [] join our sister circuits in holding that where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PTRF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand.") *with Butler v. Astrue*, 2010 WL 2584200, *3-4 (M.D. Ala. Jun. 24, 2010) (in a case in which the ALJ made no mention of the claimant's depression, which was diagnosed and being treated with medication, court remanded finding even if claimant's depression was less than severe it was a colorable claim and, therefore, the ALJ was required to complete a PTRF and append it to his decision, or incorporate its mode of analysis into his findings and conclusions). It appears to this Court that the ALJ's failure to append to her decision a PRTF, or otherwise incorporate its mode of analysis into her decision, was clear error requiring remand.